**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Krystine Betty Holladay,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-18-08304-PCT-DLR<br><br>**ORDER** |

At issue is the denial of Plaintiff Krystine Betty Holladay's Application for Supplemental Security Income Benefits by the Social Security Administration (SSA) under the Social Security Act (the Act). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 15, Def. Br.), and Plaintiff's Reply (Doc. 16, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 11, R.) and now affirms the Administrative Law Judge's (ALJ) decision (R. at 14–32).

**I.     BACKGROUND**

Plaintiff filed her Application on January 6, 2015 for a period of disability beginning on January 10, 2005. (R. at 17.) Plaintiff's claim was denied initially on August 19, 2015, and upon reconsideration on January 27, 2016. (R. at 17.) Plaintiff then testified at a video hearing held before the ALJ on September 18, 2017. (R. at 17.) On December 27, 2017,

the ALJ denied Plaintiff's Application. (R. at 14–32.) This decision became final on August 28, 2018, when the Appeals Council denied Plaintiff's request for review. (R. at 1–3.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: "affective disorder; anxiety disorder; bipolar disorder with psychotic features, most recent episode depressed." (R. at 19.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded Plaintiff is not disabled. (R. at 27.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 19.) The ALJ also found that Plaintiff has the residual functional capacity (RFC) "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple and some complex tasks; she can do work where she can relate to others on a superficial work basis, meaning the contact required should be no more than occasional interaction; she can adapt to work situations with forewarning; and she can perform work that is not pace work or [has] no pace work requirement." (R. at 21.) The ALJ concluded that Plaintiff has no past relevant work but can perform a significant number of jobs in the national economy. (R. at 26.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a

whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ improperly discredited Plaintiff's symptom testimony; (2) the ALJ improperly rejected lay witness testimony; and (3) the ALJ erred in determining Plaintiff's RFC. The Court rejects each of Plaintiff's arguments.

### A. The ALJ properly discounted Plaintiff's symptom testimony.

The ALJ provided the following reasons for discrediting Plaintiff's symptom testimony: (1) Plaintiff's records indicate that her symptoms improved; (2) Plaintiff's daily activities were inconsistent with her purported limitations; and (3) Plaintiff's treatment records did not document significant functional limitations. (R. at 22–23.)

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). When evaluating credibility, the "ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the ALJ may consider the lack of objective evidence along with the claimant's reputation for truthfulness; inconsistencies in testimony; daily activities; and unexplained failure to seek treatment. *Orn*, 495 F.3d at 636.

The ALJ's finding that Plaintiff's records showed improvement and stability satisfies the exacting clear and convincing standard and is supported by substantial evidence. (R. at 23.) Plaintiff argues this was error because mental health symptoms frequently wax and wane, making it improper for an ALJ to rely on isolated instances of improvement to conclude a claimant is capable of working. (Pl. Br. at 14.) Cycles of improvement are a common occurrence with mental health symptoms, so the ALJ must cautiously evaluate improvement and choose data points that "in fact constitute examples

of broader development to satisfy the applicable clear and convincing standard." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). The Court finds that the ALJ did so here.

Plaintiff testified that she experiences mood fluctuations, with bad days occurring approximately three to four times per week. (R. at 40.) She also testified that she hates leaving her house, and her husband had to convince her to go to the hearing. (R. at 42.) According to Plaintiff, a typical bad day involves her waking up around 2:00 p.m., drinking coffee, going back to her room to check her email and play computer games, and going back to bed due to her anxiety. (R. at 39.)

As a preliminary matter, the ALJ determined that Plaintiff's allegation of disability dating back to 2008[1] is not supported by objective medical evidence because there are limited treatment records prior to 2014. (R. at 22.) The ALJ then identified several records beginning in 2014 that indicate Plaintiff's symptoms improved over time and in response to treatment. For example, although Plaintiff reported that she struggled in interpersonal relationships, she and her husband lived with two male roommates, and she testified that she spends time with family. (R. at 23.) Additionally, Plaintiff cared for her elderly parents for a period of time and enjoys spending time with her pets. (R. at 23.) The ALJ also noted that Plaintiff indicated she watches TV, reads, plays games, uses the internet, and does household chores. (R. at 21.) Records further show that Plaintiff has exhibited appropriate grooming and hygiene. (R. at 20.)

With regard to Plaintiff's treatment, the ALJ found that as of early 2015, Plaintiff had not taken psychotropic medications since May 2014, and practitioners indicated there was no need to prescribe medication at that time. (R. at 23.) In mid to late 2015, Plaintiff reportedly wanted to address an onset of depression due to multiple family issues and was looking to maintain the level of stability she achieved during the previous three years. (R. at 23.) The ALJ noted that "with a restart of medication, nightmares had lessened and auditory hallucinations were gone." (R. at 23.) The ALJ also found that throughout 2015,

---

[1] In her opinion, the ALJ identified that Plaintiff alleged disability beginning in 2005, not 2008. The Court notes that this discrepancy does not bear on the ALJ's decision since she identified that there were few records pre-dating 2014.

Plaintiff's mental status exams were largely within normal limits and "included intact attention and concentration, memory, insight and judgment and euthymic mood." (R. at 24.) Additionally, Plaintiff's anger, irritability, and dysphoria were diminished. (R. at 23.) Although Plaintiff repeatedly struggled with insomnia, the ALJ found that she "admitted to being addicted to gaming late at night" and "had her cell phone with her at all times." (R. at 24.) Moreover, the record reflects that her sleep was improved with medication and better sleep hygiene. (R. at 632.)

In addition to the records the ALJ discussed in her analysis, there are records that show that Plaintiff was getting out and socializing more in 2014, including rifle shooting with her husband, spending time with friends, and obtaining her driver's license. (R. at 341, 361, 362.) A record from November 2014 indicates Plaintiff started back in school or work for six consecutive months. (R. at 341.) Plaintiff and her husband were caring for 16 puppies at one time. (R. at 349.) Plaintiff denied mood swings, anger, and irritability (R. at 349, 471), and her behavioral health practitioner noted that Plaintiff was neatly or casually groomed, looked well-rested, was friendly and talkative, and had a bright affect. (R. at 350, 361–62). Plaintiff's desire for social interaction continued in 2016, when she expressed that she wanted to get out more and was bored with her daily routine and lack of structure. (R. at 559, 626–27.) More recently, Plaintiff reported that she had been looking into vocational rehabilitation options, which indicates she was considering her ability to work. (R. at 540.)

With regard to Plaintiff's recent increase in depression, the ALJ concluded that Plaintiff's reaction was normal considering recent stressors, which included the death of her father, a change in her living situations that resulted in decreased privacy, and multiple miscarriages. (R. at 24.) Plaintiff argues that the ALJ usurped the role of doctors by interpreting the medical evidence and opining as to Plaintiff's work capacities. (Pl. Br. at 15.) The Court agrees that the ALJ improperly opined about the medical evidence, which constitutes error. However, the Court finds that in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting her decision and any

error was harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Specifically, the ALJ relied on the opinions of Gary Reyes, M.D., Laura Eckert, Ph.D., and Margaret Friedman, Psy.D., the consultative psychologists in this case, who opined that Plaintiff had moderate limitations but was not totally disabled. (R. at 25, 451, 463).[2]

In sum, although the evidence may support an interpretation more favorable to Plaintiff, the ALJ's interpretation was rational, and the Court upholds the decision where the evidence is subject to more than one rational interpretation. *Burch*, 400 F.3d at 680–81.

The ALJ also discredited Plaintiff's testimony because she married and has attempted to start a family, and her medical treatment records fail to document any significant functional limitations. (R. at 21–22.) The Court finds that neither of these reasons is specific, clear and convincing. With regard to Plaintiff's marriage and attempts to have children, "[t]he Ninth Circuit has repeatedly stated that claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Bergfeld v. Barnhart*, 361 F.Supp.2d 1102, 1115 (D. Ariz. 2005). Moreover, "the ALJ must link the claimant's daily activities to the ability to perform full-time work when assessing residual functional capacity." *Id.* Here, the ALJ did not explain why Plaintiff's attempts to start a family undermined her alleged limitations. Therefore, this was not a clear and convincing reason to discredit Plaintiff's symptom testimony. The Ninth Circuit has also stated that "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations." *Orn*, 495 F.3d at 634. Therefore, the mere absence of medical records that substantiate the severity of Plaintiff's symptoms is not a clear and convincing reason to discredit her testimony.

Because the Court concludes that some of the ALJ's reasons supporting her adverse credibility finding are improper, the Court must determine whether the ALJ's reliance on

---

[2] Notably, Plaintiff does not argue that the ALJ should have given more weight to the opinions of Kim Farmer, a licensed professional counselor, or Nancy Ellis, a behavioral health technician.

such reasons was harmless error. *Carmickle*, 533 F.3d at 1162. "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). The Court finds that in light of (1) the ALJ's finding that Plaintiff's symptoms improved and stabilized, and (2) the objective medical evidence on which the ALJ relied, there was substantial evidence supporting her decision. In sum, the ALJ's error in relying on improper reasons was harmless and does not invalidate the ALJ's ultimate conclusion that Plaintiff's symptom testimony was not fully credible.

**B.     The ALJ properly rejected the lay witness testimony.**

The second issue Plaintiff raises is that the ALJ erred by rejecting the lay witness testimony of Dean Holladay, Plaintiff's father-in-law. (Pl. Br. at 21–22.) The ALJ rejected Mr. Holladay's statement for two reasons: (1) by virtue of his relationship with the claimant, he was not a disinterested party; and (2) his statement was inconsistent with the medical evidence. (R. at 26.)

Here, the ALJ determined that Mr. Holladay's statements were "not consistent with the preponderance of the opinions and observations by behavioral health providers in this case." (R. at 26.) This is a germane reason and it is supported by substantial evidence. *See Molina*, 674 F.3d at 1114 (finding that the ALJ need only give germane reasons for discrediting lay witness testimony); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (finding that inconsistency between lay witness testimony and the medical evidence of record is a germane reason to discredit the lay witness testimony).

The ALJ also rejected Mr. Holladay's testimony because he was a family member, and thus not a disinterested party. This was error. *Smolen*, 80 F.3d at 1288 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony."). However, this error was harmless because the ALJ supported her conclusion with another legally sufficient reason. *Carmickle*, 533 F.3d at 1162.

### C. The ALJ correctly calculated Plaintiff's RFC.

Plaintiff's final argument is that the ALJ erred in calculating the RFC for two reasons: (1) the ALJ did not articulate whether Plaintiff could sustain work on a regular and continuing basis; and (2) the ALJ did not factor into the RFC calculation Plaintiff's moderate mental limitations. (Pl. Br. at 18–19.)

The Court finds Plaintiff's arguments unconvincing and therefore affirms the ALJ's determination. Plaintiff's first argument—that the ALJ did not articulate whether Plaintiff could sustain tasks—overstates the ALJ's duty. The RFC is the most a claimant can do on a sustained basis despite her limitations. 20 C.F.R. § 404.1545(a)(2). The regulations require an ALJ to assess whether a claimant can do work-related activities on a regular and continuing basis. 20 C.F.R. § 404.1545(c). The ALJ's evaluation of a claimant's ability to sustain work is therefore inherent in the RFC calculation, and the regulations do not require the ALJ to recite special incantations to meet the legal standard.

Instead, when calculating a claimant's RFC, the ALJ must account for all relevant medical evidence and descriptions of claimant's limitations. 20 C.F.R. § 416.945(a)(3); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). Where the ALJ has applied the proper legal standard and supported her decision by substantial evidence, the Court will affirm the ALJ's RFC determination. *Bayliss*, 427 F.3d at 1217.

Plaintiff's follow-up argument that the ALJ did not consider her moderate mental limitations when calculating the RFC lacks merit. The ALJ detailed the severity of Plaintiff's mental impairments at step two and considered them again at step four when calculating the RFC. Because the ALJ considered the medical records, symptom testimony, and opinion evidence in formulating the RFC, which is evident in the ALJ's detailed discussion of the evidence, the Court affirms the RFC determination.

**IT IS THEREFORE ORDERED** affirming the December 27, 2017 decision of the Administrative Law Judge (R. at 14–32).

//

//

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 10th day of December, 2019.

_____
Douglas L. Rayes
United States District Judge